UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
JAMES PAUL,                          :  09 Civ. 5784 (JSR) (JCF)
                                     :
               Plaintiff,            :       REPORT AND
                                     :    RECOMMENDATION
      - against -                    :
                                     :
WARDEN BAILEY, DR. GOLDBERG, JOHN    :
OR JANE DOE, M.B. (DEPUTY WARDEN     :
O.B.C.C.), and WILLIAM THOMAS,       :
                                     :
               Defendants.           :
- - - - - - - - - - - - - - - - - - -:
TO THE HONORABLE JED S. RAKOFF, U.S.D.J.:

     James Paul, a prison inmate, brings this action pro se
pursuant to 42 U.S.C. § 1983 against Warden Bailey, Dr. Goldberg,
John or Jane Doe, M.B. (Deputy Warden O.B.C.C.) ("M.B."),[1] and
William Thomas.[2]  The plaintiff claims that while he was detained
at the George Motcham Detention Center ("GMDC"), the Otis Bantum
Correctional Center ("OBCC"), and the Robert N. Devoren Complex
("RNDC") on Rikers Island, the defendants failed to provide him
with medically-required shoes despite the fact that prison-issued
footwear caused him lacerations, open wounds, and scarring on his
feet.  Mr. Paul alleges that the defendants' behavior demonstrates

_____

     [1] The plaintiff has failed to serve M.B. with the Amended
Complaint, and I therefore do not address the merits of the claims
asserted against this defendant.  Instead, I have sent plaintiff a
letter directing him to explain why the claims against M.B. should
not be dismissed pursuant to Rule 4(m) of the Federal Rules of
Civil Procedure.

     [2] Initially, Mr. Paul also brought claims against Brian
Fischer, the Commissioner of the New York State Department of
Correctional Services and Richard T. Wolf, the Executive Director
of the New York City Board of Correction.  The Honorable Loretta A.
Preska, Chief Judge, dismissed all claims against these defendants.
(Order dated June 24, 2009 ("Order") at 4.

                              1

deliberate indifference to his medical condition, constituting cruel and unusual punishment in violation of the Eighth Amendment.[3] Warden Bailey, Dr. Goldberg, and Mr. Thomas (the "Moving Defendants") have moved to dismiss the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, I recommend that the plaintiff's claims against Dr. Goldberg and Mr. Thomas be dismissed with prejudice. Additionally, I recommend that the claims against Warden Bailey be dismissed without prejudice and that Mr. Paul be granted leave to amend in order to assert facts that would support a claim against this defendant.

Background

    A. Facts[4]

---

[3] Based on a review of the documents submitted to this Court, the plaintiff appears to assert his claim solely under the Eighth Amendment. The defendants, however, imply that the plaintiff also alleges a claim under the Fourteenth Amendment. (Memorandum of Law in Support of Defendant's Motion to Dismiss Pursuant to F.R.C.P. Rule 12(B)(6) of the Federal Rules of Civil Procedure ("Def. Memo.") at 1). The significance of this distinction is that Eighth Amendment protections extend to convicted prisoners while the Fourteenth Amendment protects pretrial detainees.

It is not clear from the record whether Mr. Paul was a convicted prisoner or simply a pretrial detainee at the time his claims arose. However, the distinction is not critical for present purposes because medical care claims of pretrial detainees made pursuant to the Fourteenth Amendment are evaluated by the same standards as those of convicted prisoners made pursuant to the Eighth Amendment. Caiozzo v. Koreman, 581 F.3d 63, 72 (2d Cir. 2009).

[4] The factual allegations are taken from the Amended Complaint as well as the documents attached thereto.

In addition, the plaintiff apparently intended to incorporate in his Amended Complaint the information contained in his original Complaint. Specifically, he stated in his Amended Complaint,

On December 2, 2008, the Department of Correction of the City of New York ("DOC") instituted a policy prohibiting inmates from wearing their own personal footwear and requiring them to wear DOC-issued shoes, which the plaintiff refers to as "Patterson[s]." (Am. Compl., ¶¶ II(C), (D); Complaint ("Compl."), ¶ II(D); Grievant's Statement Form dated Dec. 11, 2008 ("Grievance-1"), attached to Compl.). On December 8, 2008, Mr. Paul, who was housed at GMDC, reported to "sick-call due to layer[]s of skin rubbing off from the tongs [sic] and heels of [his] feet," a problem that he contends was caused by the prison-issued shoes. (Grievance-1). The plaintiff claims that the lacerations he sustained had to be treated and re-bandaged daily by prison nurses. (Am. Compl., ¶ III; Return to Clinic Appointment Card, attached to Compl.; Grievance-1). He further alleges that these injuries required him to wash his sheets each morning to remove blood and pus stains. (Grievance-1).

On December 11, 2008, Mr. Paul filed his first grievance, detailing his complaints regarding the footwear policy. (Grievance-1). The plaintiff alleges that his grievance was not taken seriously and was subsequently "discarded" by the Inmate Grievance Resolution Committee (the "IGRC").[5] (Am. Compl., ¶

---

"[A]ttach[ed] [are] additional exhibits along with the one[]s that was sent with my First 1983 that was recorded in this order that was to be Amended." (Amended Complaint ("Am. Compl."), at ¶ IV(G)) (emphasis added). Accordingly, I read the Amended Complaint to include the allegations and exhibits from the original Complaint.

[5] Throughout his Amended Complaint, the plaintiff refers to both "grievance personnel" and "IGRC" as having reviewed his grievance

II(D)).   After filing this grievance, Mr. Paul alleges that he spoke personally with Warden Bailey of GMDC at a weekly meeting, where the warden stated that "[anyone] with medical conditions [would] be given back [their shoes] or suitable ones."   (Am. Compl., ¶ III(G)).

On December 18, 2008, the plaintiff was transferred from GMDC to OBCC (undated letter of James Paul ("Paul Letter"), attached to Compl., at 1).   Mr. Paul claims that the grievance he previously filed did not follow him.   (Am. Compl.,  ¶ II(D); Paul Letter at 1).   On December 24, 2008, Dr. Goldberg, a podiatrist,[6] diagnosed the plaintiff with flat feet, prescribed "suitable footwear," and ordered Mr. Paul to come back in a week for a follow-up appointment.   (Paul Letter at 1).   Mr. Paul returned to the doctor as instructed on December 31, 2008, but was treated by John or Jane Doe, M.D.,[7] in Dr. Goldberg's absence.   (Paul Letter at 2).   At this appointment, the plaintiff was informed that pursuant to a

---

forms.   I construe both terms to refer to the Inmate Grievance Resolution Committee, the entity designated by DOC as responsible for the resolution of inmate grievances.   DOC Directive dated March 13, 2008, http://www.nyc.gov/html/doc/downloads/pdf/3375R-A.pdf, at 1.

[6] The plaintiff refers to two physicians as "foot doctors," whom I assume to be podiatrists.

[7] The plaintiff refers to an unnamed doctor whom he saw one week after his initial visit with Dr. Goldberg.   (Paul letter at 2).   I draw the inference that "John or Jane Doe" is the second, unnamed physician because in his Amended Complaint the plaintiff lists this defendant's place of employment as the West Facility of Rikers Island, which he also lists as Dr. Goldberg's workplace. (Am. Compl., ¶ I(B)).   Mr. Paul further reports that, like Dr. Goldberg, Mr. or Ms. Doe lacks a badge number.   (Am. Compl., ¶ I(B)).   The moving defendants appear to make similar assumptions, as they also list this defendant as a doctor.   (Def. Memo. at 4).

policy that went into effect after his initial visit, he was now required to consult a dermatologist before receiving new footwear. (Paul Letter at 2).  Mr. Paul claims that Dr. Goldberg's absence demonstrates "neglect," because it contributed to the delay in his receiving the prescribed footwear.  (Am. Compl., ¶ V).

The plaintiff alleges that on a later date, he resubmitted to administrators at OBCC the grievance he initially filed at GMDC. (Grievant's Statement Form ("Grievance-2"), attached to Compl.). Thereafter, on January 3, 2009, he submitted an interview request to DOC regarding his previous two grievance filings.  (DOC Interview Request Form, attached to Compl.).  On January 5, 2009, Mr. Paul was informed by the Disability Rights Coordinator for Inmates that his request for supportive footwear was not granted because an interim policy change required that he submit his footwear request directly to medical staff.  (DOC Accommodation Determination Acknowledgment for Inmates, attached to Compl.).

On January 14, 2009, Dr. James Taft, a dermatologist, examined the plaintiff and recommended that he "wear normal shoes or sandals that do not cause friction to dorsal feet." (Consultation Request ("Consult"), attached to Compl.).  At an unspecified date after Dr. Taft made his recommendation, the plaintiff was issued authorization to wear supportive footwear.  (Medical Modification Card ("Med. Card"), attached to Am. Compl.; Am. Compl., ¶ II(D)). This authorization was in the form of a card signed by M.B.,[8] a

_____

[8] The medical modification card is signed by a Deputy Warden in the OBCC facility whose signature is largely illegible. Accordingly, Mr. Paul identified this defendant by his initials,

Deputy Warden of OBCC.   (Med. Card.; Am. Compl., ¶¶ I(A), IV(G)).
The plaintiff claims that despite the authorization, no new shoes
were provided.   (Am. Compl., ¶¶ II(D) and IV(G)).

On January 15, 2009, the plaintiff submitted another grievance
to the IGRC, stating that although both the GMDC and OBCC
facilities were aware of his medical problems, neither had provided
him with suitable footwear as prescribed by his podiatrists and
dermatologist.   (Grievant's Statement Form dated Jan. 15, 2009
("Grievance-3"), attached to Compl.).   On Jan. 21, 2009, Mr. Paul
filed his fourth grievance, again asking that he be provided with
his medically-required shoes.   (Inmate Grievance Form dated Jan.
21, 2009 ("Grievance-4"), attached to Am. Compl.).   The IGRC
responded on January 28, 2009, informing the that he would be
provided with the footwear as recommended by his doctors.
(Grievance-4).

On February 3, 2009, the plaintiff learned that he was being
transferred to RNDC.   (Grievance Form dated Feb, 3, 2009
("Grievance-5"), attached to Am. Compl.; Am. Compl., ¶ II(D)).   Not
yet in receipt of the medically-required shoes, Mr. Paul filed a
fifth grievance, requesting new footwear before his transfer.
(Grievance-5).   Nonetheless, the plaintiff was moved to RNDC
without being provided with the shoes.   (Inmate Grievance
Resolution Program RNDC dated Feb. 2, 2009 ("Grievance-6"),
attached to Am. Compl.).   As a result, he filed a sixth grievance
on February 5, 2009, urging that DOC "honor the doctor[s'] order

---

which can be deciphered.

and give [him his] footwear please." (Grievance-6). According to the plaintiff, the medical personnel at RNDC also failed to supply him with new shoes and blamed the facilities at Rikers Island where he had previously been housed for not providing him with appropriate footwear. (Am. Compl., ¶ II(D)). Thereafter, Mr. Paul was transferred out of Rikers Island to the Downstate Correctional Facility, a state institution. (Am. Compl., ¶ II(D)).

B. <u>Procedural History</u>

On June 24, 2009, the plaintiff's Complaint was filed in this Court.[9] On that same date, Chief Judge Preska directed Mr. Paul to submit an amended complaint in order to correct several deficiencies in his pleading. (Order at 1, 5-6). Specifically, Mr. Paul was told to (1) provide the names and titles of all relevant persons; (2) describe all relevant events, stating the facts that support his case including what each defendant did or failed to do; (3) provide the dates and times of each relevant event; (4) provide the location where each relevant event occurred; (5) describe how each defendant's acts or omissions violated his rights as well as the injuries he suffered; and (6) state what relief he seeks. (Order at 5).

On August 5, 2009, the plaintiff filed the Amended Complaint. The Moving Defendants now move to dismiss that pleading, arguing that Mr. Paul has failed to state a claim upon which relief can be granted.

---

[9] The Complaint was signed on January 14, 2009 and received by this Court's <u>Pro Se</u> Office on January 21, 2009.

Discussion

    A. <u>Legal Standard for Dismissal</u>

In assessing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. <u>Erickson v. Pardus</u>, 551 U.S. 89, 93-94 (2007) (per curiam); <u>Freedom Holdings, Inc. v. Spitzer</u>, 357 F.3d 205, 216 (2d Cir. 2004); <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 152 (2d Cir. 2002).  A complaint need not contain detailed factual allegations, but must contain more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action.  <u>Ashcroft v. Iqbal</u>, 556 U.S. ___, ___, 129 S. Ct. 1937, 1949-50 (2009) (citing <u>Bell Atlantic v. Twombly</u>, 550 U.S. 544, 555 (2007)).  Where the complaint's factual allegations permit the court to infer only that it is possible, but not plausible, that misconduct occurred, the complaint fails to meet the requirements of Rule 8.  <u>Id.</u> at ___, 129 S. Ct. at 1950 (citing Fed. R. Civ. P. 8(a)(2)).  "The task of the court in ruling on a Rule 12(b)(6) motion is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof."  <u>In re Initial Public Offering Securities Litigation</u>, 383 F. Supp. 2d 566, 574 (S.D.N.Y. 2005) (internal quotation marks omitted).

<u>Pro Se</u> complaints are held to less stringent standards than those drafted by lawyers.  <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972); <u>Boykin v. KeyCorp</u>, 521 F.3d 202, 213-14 (2d Cir. 2008)

(citing Erickson, 551 U.S. at 94).  In fact, pleadings of a pro se party should be read "'to raise the strongest arguments that they suggest.'"  Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001) (quoting Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996)).  Even after Iqbal, which imposed heightened pleading standards for all complaints, pro se complaints are still to be liberally construed. See Harris v. Mills, 572 F.3d 66, 71-72 (2d Cir. 2009).  Dismissal of a pro se complaint is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements.  See Rodriguez v. Weprin, 116 F.3d 62, 65 (2d Cir. 1997).

On a motion to dismiss, the court is generally limited to reviewing the allegations in the complaint and documents attached to it or incorporated by reference.  See Chambers, 282 F.3d at 152-54.  The court may also consider documents necessarily relied upon by the plaintiff in drafting the complaint.  Id. at 153-54.

B. Deliberate Indifference Claim

To state a claim under Section 1983, Mr. Paul must show that while acting under color of state law, the defendants deprived him of federal constitutional or statutory rights.  McKithen v. Brown, 481 F.3d 89, 99 (2d Cir. 2007).  Here, the plaintiff claims that while incarcerated, he was deprived of adequate medical care in violation of the Eighth Amendment's protection against cruel and unusual punishment.

"In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'"  Chance v.

9

<u>Armstrong</u>, 143 F.3d 698, 702 (2d Cir. 1998) (quoting <u>Estelle v.</u> <u>Gamble</u>, 492 U.S. 97, 104 (1976)).  A cognizable claim of deliberate indifference consists of (1) an objective "medical need" element measuring the severity of the alleged deprivation, and (2) a subjective "deliberate indifference" element measuring whether the prison official acted with a sufficiently culpable state of mind. <u>Smith v. Carpenter</u>, 316 F.3d 178, 183-84 (2d Cir. 2003).

      1. <u>Serious Medical Need</u>

The objective element for an Eighth Amendment claim of inadequate medical care requires that the complainant's medical condition be "sufficiently serious." <u>Salahuddin v. Goord</u>, 467 F.3d 263, 279 (2d Cir. 2006) (internal quotation marks omitted); <u>Hathaway v. Coughlin</u>, 99 F.3d 550, 553 (2d Cir. 1996).  While this standard most certainly includes "condition[s] of urgency . . . that may produce death, degeneration, or extreme pain," <u>id.</u>, it has also been interpreted to include "less serious denials [of medical attention] which cause or perpetuate pain."  <u>Brock v. Wright</u>, 315 F.3d 158, 163 (2d Cir. 2003).

Arguing that a "footwear-induced injury . . . is recognized as little more than a <u>de</u> <u>minimus</u> physical injury" in the Second Circuit, the Moving Defendants point to three cases in which similar Section 1983 claims were dismissed.  (Affirmation of Paul Stuart Hoberman dated March 24, 2010, ¶ 12).  However, none of those cases establishes the proposition that a failure to issue medically-required shoes cannot in any circumstance amount to injury that is sufficiently serious to support a successful claim

under Section 1983.

In Douglas v. Hollins, 160 Fed. Appx. 55, 56 (2d Cir. 2005), the Second Circuit held that "the district court properly concluded that [the plaintiff] had failed to present evidence that the denial of his request for orthopedic footwear was made with deliberate indifference in violation of the Eighth Amendment." Such a statement by no means rules out that another plaintiff could present sufficient evidence. Similarly, the court in Woods v. Goord, No. 97 Civ. 5143, 1998 WL 740782, at *6 (S.D.N.Y. 1998), dismissed a deliberate indifference claim that included the failure to prescribe medical footwear because the plaintiff failed to show that the defendant had the requisite mental state; the court did not comment on the seriousness of the injury. Finally, in Rodriguez v. Ames, 224 F. Supp. 2d 555, 562 (W.D.N.Y. 2002), a claim that prison staff acted with deliberate indifference when the plaintiff was not prescribed orthopedic boots was dismissed because the lack of the boots only caused the plaintiff "unnecessary discomfort" and did not amount to a serious medical condition. This, however, does not preclude the possibility that a more severe injury could give rise to a constitutional harm.

It is clear that injuries that are less than life-threatening can qualify as substantially serious. The "seriousness" of any given medical condition is determined by factors such as "(1) whether a reasonable doctor or patient would perceive the medical need in question  as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects

daily activities, and (3) 'the existence of chronic and substantial
pain.'" Brock, 315 F.3d at 162 (quoting Chance, 143 F.3d at 702).
When the pain suffered is chronic, the plaintiff need only show
that such pain is not merely "annoying." See id. at 163.  Here,
Mr. Paul's injuries and resulting pain can fairly be classified as
chronic.  This conclusion is not only evidenced by his description
of continual pain, but also can be inferred from the fact that the
plaintiff filed six grievances in the span of three months.  As a
result, Mr. Paul is not required to demonstrate that he experienced
"severe" pain or pain that was "at the limit of human ability to
bear."  See id.

     Although Mr. Paul's medical problem was not life-threatening,
the lacerations on his feet caused by the DOC-issue shoes allegedly
caused him consistent pain.  He reported for daily treatment of his
wounds and routinely bled on his sheets.  (Grievance-1).  Mr. Paul
saw two podiatrists and a dermatologist who concurred that he
should be given medically-required shoes.  (Paul Letter at 1-2;
Consult).  Thus, Mr. Paul's injuries are fairly classified as
causing chronic pain that was more than merely annoying and
therefore of sufficient seriousness to satisfy the objective prong
of his medical care claim.

          2. Deliberate Indifference

     The subjective prong of an Eighth Amendment claim of
inadequate medical care requires "that the charged official [] act
with a sufficiently culpable state of mind." Hathaway, 99 F.3d at
553.  "The required state of mind, equivalent to criminal

                                12

recklessness, is that the official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Hemmings v. Gorczyk, 134 F.3d 104, 108 (2d Cir. 1998) (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). Each defendant's state of mind must, of course, be analyzed seperately.

<u>          </u>          a. <u>Warden Bailey</u>

Mr. Paul alleges that Warden Bailey had notice of his medical condition and of the doctors' prescriptions, but he provides few facts to substantiate that assertion. (Am. Compl., ¶ IV(G)). The plaintiff claims that he spoke personally with Warden Bailey at a GMDC "house meeting," informing him of his medical need for new shoes, in response to which the warden stated that anyone who required special shoes for medical reasons would receive them. (Am. Compl., ¶ IV(G)). However, it was seemingly impossible for the plaintiff to have notified Warden Bailey of any medical order at this meeting because the first recorded prescription for non-standard shoes was issued on December 24, 2008, six days after Mr. Paul was transferred out of the GMDC facility. (Paul Letter at 1). Thus, at the time when Mr. Paul allegedly spoke with Warden Bailey, he had only been treated by nurses and had yet to see a doctor, much less obtain a prescription for suitable shoes.

Therefore, the plaintiff has not pled facts that establish that Warden Bailey knew that the prison-issued shoes caused Mr. Paul lacerations and chronic pain. In the absence of such facts,

there can be no plausible inference that Warden Bailey's failure to provide the plaintiff with new shoes demonstrates a purposeful or reckless disregard of Mr. Paul's medical condition.   The claim against Warden Bailey should therefore be dismissed.

However, a <u>pro se</u> plaintiff must be given leave to amend his complaint at least once "'unless the court can rule out any possibility, however unlikely it may be, that an amended complaint would succeed in stating a claim.'"   <u>Abbas v. Dixon</u>, 480 F.3d 636, 639 (2d Cir. 2007) (quoting <u>Gomez v. USAA Federal Savings Bank</u>, 171 F.3d 794, 796 (2d Cir. 1999).   In her Order dismissing his original Complaint, Chief Judge Preska made Mr. Paul aware that he needed to provide additional information demonstrating the defendants' deliberate indifference in denying him appropriate footwear in order to sustain his Section 1983 claim.   (Order at 2). The Order emphasized that "'[d]eliberate indifference' must be evidenced by proof that corrections personnel intentionally denied, delayed access to or interfered with prescribed treatment."   (Order at 2).   Furthermore, with respect to the wardens named in the original Complaint, the Order instructed the plaintiff to "state facts to support his claim that the wardens . . . were in some way involved personally in his injuries."   (Order at 5).

By pleading some specific facts in support of his claims against Warden Bailey, it appears that the plaintiff took steps to comply with the Order.   However, because Mr. Paul has not provided information to demonstrate that Warden Bailey had actual knowledge of the severity of his foot injuries, the factual allegations as

they currently stand permit the Court to infer only that it is possible, but not plausible, that misconduct occurred.  Thus, the Amended Complaint fails to meet the requirements of Rule 8 and should be dismissed.   Nevertheless, the possibility that an additional amendment of the complaint would succeed in stating a cognizable claim against Warden Bailey cannot be ruled out. Accordingly, I recommend that the claims against Warden Bailey be dismissed without prejudice and the plaintiff be afforded an additional thirty days to submit a Second Amended Complaint setting forth sufficient facts, if they exist, to establish his claims of medical indifference against this defendant.

          b. Dr. Goldberg

     The plaintiff has not alleged that Dr. Goldberg knew of and disregarded an excessive risk to inmate health or safety.  To the contrary, Mr. Paul's allegations specifically state that he only met Dr. Goldberg on one occasion, when the doctor examined him, diagnosed his injuries, and prescribed Diprolene cream and suitable shoes. (Paul Letter at 1).   At no point does the plaintiff contend that Dr. Goldberg was personally responsible for providing such shoes.  From the facts presented, it appears that Dr. Goldberg completed his duties as a medical provider and sent Mr. Paul off with a prescription to be filled by Rikers Island administrators.

     Furthermore, Mr. Paul's claim that Dr. Goldberg "neglect[ed]" him by being off-duty, causing him to see another doctor and thereby delaying his treatment, does not amount to deliberate indifference. Even if this conduct were negligent, which seems

unlikely, "mere negligence will not suffice" to establish the subjective element of deliberate indifference. See Hayes v. New York City Department of Correction, 84 F.3d 614, 620 (2d Cir. 1996). Therefore, I recommend that the claims against Dr. Goldberg be dismissed. Because the deficiencies in the plaintiff's claims against Dr. Goldberg would not be remedied by granting leave to amend, these claims should be dismissed with prejudice.

### c. William Thomas

Despite Chief Judge Preska's Order instructing the plaintiff to submit an Amended Complaint stating "what each Defendant did or failed to do . . . [and] describe how each Defendant's acts or omission violated Plaintiff's rights," Mr. Paul has not provided any facts relating to Mr. Thomas in either of his pleadings. (Order at 5). I therefore recommend that the claims against this defendant be dismissed with prejudice.

### Conclusion

For the reasons stated above, I recommend that the plaintiff's claims against Warden Bailey, Dr. Goldberg, and William Thomas be dismissed, but that the plaintiff be given one final opportunity to replead his claims against Warden Bailey. Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedural, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Jed S. Rakoff, U.S.D.J., Room 1340, and to the chambers

of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

Respectfully submitted,

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:        New York, New York
              July 21, 2010

Copies mailed this date to:

James Paul
09-A-0790
Bare Hill Correctional Facility
Caller Box #20
181 Brand Road
Malone, New York 12953-0020

Paul S. Haberman, Esq.
Heidell, Pittoni, Murphy & Bach, LLP
99 Park Avenue
New York, New York 10016

17