```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
JAMES PAUL,                           : 09 Civ. 5784 (BSJ) (JCF)
                                      :
         Plaintiff,                   :      REPORT AND
                                      :    RECOMMENDATION
                                      :
   - against -                        :
                                      :
WARDEN BAILEY and DEPUTY WARDEN       :
MERVIN BATSON (M.B.),                 :
                                      :
         Defendants.                  :
- - - - - - - - - - - - - - - - - - -:
```
TO THE HONORABLE BARBARA S. JONES, U.S.D.J.:

James Paul, a prison inmate, brings this action pro se pursuant to 42 U.S.C. § 1983 against Warden Emmanuel Bailey and Deputy Warden Mervin Batson.[1] The plaintiff claims that while he was detained at the George Motcham Detention Center ("GMDC") and the Otis Bantum Correctional Center ("OBCC"), the defendants failed to provide him with medically-required shoes despite the fact that his prison-issued footwear caused lacerations, open wounds, and scarring on his feet. Mr. Paul alleges that the defendants'

---

[1] Initially, Mr. Paul also brought claims against Brian Fischer, the Commissioner of the New York State Department of Correctional Services; Richard T. Wolf, the Executive Director of the New York City Board of Correction; Dr. Goldberg, a podiatrist at OBCC; and Warden William Thomas of OBCC. The Honorable Loretta A. Preska, Chief Judge, dismissed all claims against Mr. Fischer and Mr. Wolf. (Order dated June 24, 2009 ("Preska Order") at 4). The Honorable Jed S. Rakoff, U.S.D.J. dismissed all claims against Dr. Goldberg and Mr. Thomas. (Order dated Aug. 18, 2010 ("Rakoff Order") at 1). Subsequently, the case was reassigned to the Honorable Barbara S. Jones, U.S.D.J.

1

behavior demonstrates deliberate indifference to his medical condition, constituting cruel and unusual punishment in violation of the Eighth Amendment.[2]  The defendants have moved to dismiss the Second Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  For the reasons set forth below, I recommend that the defendants' motion be denied.

Background

    A. Facts[3]

---

[2] Based on a review of the documents submitted to this Court, the plaintiff appears to assert his claim solely under the Eighth Amendment.  The defendants, however, imply that the plaintiff also alleges a claim under the Fourteenth Amendment.  (Memorandum of Law in Support of Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to F.R.C.P. Rule 12(b)(6) ("Def. Memo.") at 1).  The significance of this distinction is that Eighth Amendment protections extend to convicted prisoners while the Fourteenth Amendment protects pretrial detainees.

It is not clear from the record whether Mr. Paul was a convicted prisoner or simply a pretrial detainee at the time his claims arose.  However, the distinction is not critical for present purposes because claims of pretrial detainees made pursuant to the Fourteenth Amendment that relate to medical care are evaluated by the same standards as those of convicted prisoners made pursuant to the Eighth Amendment.  Caiozzo v. Koreman, 581 F.3d 63, 72 (2d Cir. 2009).

[3] The factual allegations are taken from the Second Amended Complaint as well as the documents attached to it.  In addition, the plaintiff apparently intended to incorporate the information contained in his previous complaints into his Second Amended Complaint.  Specifically, he stated in his Second Amended Complaint, "See [e]xhibit to go along with my prior ones" and "see prior exhibits."  (Second Amended Complaint ("2d Amend. Compl."), ¶¶ II(D), IV(G)).  Accordingly, I read the Second Amended Complaint to include the allegations and exhibits from the original Complaint and the Amended Complaint.

On December 2, 2008, the Department of Correction of the City of New York ("DOC") instituted a policy prohibiting inmates from wearing their own personal footwear and requiring them to wear prison-issued shoes.  (2d Amend. Compl., ¶ II(C)).  Starting on December 8, 2008, while he was housed at GMDC, the plaintiff had to be treated and bandaged daily by nurses for cuts and lacerations to his feet.  (2d Amend. Compl., ¶ II(D)).  According to Mr. Paul, the nurses concluded that his wounds were being caused by the prison-issued shoes.  (2d Amend. Compl., ¶ II(D)).

On December 11, 2008, Mr. Paul filed a grievance with the Inmate Grievance Resolution Committee (the "IGRC"), detailing his complaints regarding the footwear policy.  (Grievant's Statement Form dated Dec. 11, 2008, attached to Complaint ("Compl.")).  Thereafter, on December 15, 2008, Mr. Paul attended a GMDC "house meeting," where he relayed the nurses' diagnosis to Warden Bailey.  (2d Amend. Compl., ¶ II(D)).  Mr. Paul alleges that Warden Bailey saw the diagnosis and appointment card, and then stated that "anyone with medical problems would be given their shoes or suitable ones."  (2d Amend. Compl., ¶ II(D)).

On December 18, 2008, the plaintiff was transferred from GMDC to OBCC.  (Undated letter of James Paul ("Paul Letter"), attached to Compl., at 1).  Mr. Paul claims that the grievance he previously filed was not forwarded to the new facility.  (Amended Complaint

("Am. Compl."), ¶ II(D); Paul Letter at 1).  On December 24, 2008, he saw a podiatrist,[4] who diagnosed the plaintiff with flat feet, prescribed "suitable footwear," and ordered Mr. Paul to come back in one week for a follow-up appointment.  (Paul Letter at 1).  Mr. Paul returned to the doctor as instructed on December 31, 2008, and was informed that, pursuant to a policy that went into effect after his initial visit, he was now required to consult a dermatologist before receiving new footwear.  (Paul Letter at 2).

The plaintiff alleges that on a later date he resubmitted to administrators at OBCC the grievance he initially filed at GMDC. (Grievant's Statement Form dated Jan. 12, 2009, attached to Compl.).  Thereafter, on January 3, 2009, he submitted to DOC an interview request regarding his two previous grievance filings. (DOC Interview Request Form dated Jan. 3, 2009, attached to Compl.).

On January 14, 2009, the plaintiff was examined by a dermatologist, who recommended that he "wear normal shoes or sandals that do not cause friction to dorsal feet."  (Consultation Request, attached to Compl.).  On the following day, the plaintiff submitted another grievance to the IGRC, stating that although both the GMDC and OBCC facilities were aware of his medical problems,

---

[4] The plaintiff refers to two physicians as "foot doctors," whom I assume to be podiatrists.

4

neither had provided him with suitable footwear as prescribed by the podiatrists and dermatologist. (Grievant's Statement Form dated Jan. 15, 2009, attached to Compl.). On January 21, 2009, Mr. Paul filed his fourth grievance, again asking that he be provided with medically-required shoes. (Inmate Grievance Form dated Jan. 21, 2009 ("Grievance-4"), attached to Am. Compl.). The IGRC responded on January 28, 2009, informing Mr. Paul that he would be provided with the footwear recommended by his doctors. (Grievance-4).

At an unspecified date after the doctor's recommendation and IGRC's decision, the plaintiff was called to the clinic by Deputy Warden Batson so that photos could be taken of his medical condition. (2d Amend. Compl., ¶ II(D)). Deputy Warden Batson then made a phone call to obtain suitable shoes for Mr. Paul. (2d Amend. Compl., ¶ I(D)). However, this effort was unsuccessful, so Deputy Warden Batson placed Captain Givens[5] in charge of Mr. Paul's medical needs. (2d Amend. Compl., ¶ II(D)). At some point, Deputy Warden Batson issued authorization for the plaintiff to wear supportive footwear. (Medical Modification Card ("Med. Card"), attached to Am. Compl.; Am. Compl., ¶ II(D)). The plaintiff claims that despite Deputy Warden Batson's order, suitable footwear was

---

[5] The plaintiff does not provide Captain Givens' first name.

still not provided.  (Am. Compl., ¶¶ II(D), V).

    B.  <u>Procedural History</u>

The plaintiff signed the original Complaint on January 14, 2009, and it was delivered to the Court it shortly thereafter.  On June 24, 2009, Chief Judge Preska directed Mr. Paul to submit an amended complaint in order to correct several deficiencies in his pleading.  (Preska Order at 5-6).

On August 2, 2009, the plaintiff filed the Amended Complaint. Warden Bailey and additional defendants moved to dismiss, arguing that Mr. Paul failed to state a claim upon which relief could be granted.  On the basis of my Report and Recommendation, Judge Rakoff granted leave for Mr. Paul to again amend his complaint in order to assert facts that would support a claim against Warden Bailey.  (Rakoff Order at 1-2).  Specifically, the plaintiff was directed to allege that Warden Bailey had "actual knowledge of the severity of his foot injuries."  (Report and Recommendation dated July 21, 2010 at 14).

On August 25, 2010, the plaintiff filed the Second Amended Complaint with this Court.  The defendants now move to dismiss, arguing that Mr. Paul has failed to state a claim upon which relief can be granted.

Discussion

    A. Legal Standard for Dismissal

In considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (per curiam); Freedom Holdings, Inc. v. Spitzer, 363 F.3d 149, 151 (2d Cir. 2004). A complaint need not contain detailed factual allegations, but it must contain more than mere "'labels and conclusions'" or a "'formulaic recitation'" of the elements of a cause of action. Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007)). Where the complaint's factual allegations permit the court to infer only that it is possible, but not plausible, that misconduct occurred, the complaint fails to meet the requirements of Rule 8. Id. at ___, 129 S. Ct. at 1950 (citing Fed. R. Civ. P. 8(a)(2)).

Pro se complaints are held to less stringent standards than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (per curiam); Boykin v. KeyCorp, 521 F.3d 202, 213-14 (2d Cir. 2008) (citing Erickson, 551 U.S. at 94). Pleadings of a pro se party should be read "'to raise the strongest arguments that they suggest.'" Green v. United States, 260 F.3d 78, 83 (2d Cir.

7

2001) (quoting Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996)). Even after Iqbal, which imposed heightened pleading standards for all complaints, pro se complaints are still to be liberally construed. See Harris v. Mills, 572 F.3d 66, 71-72 (2d Cir. 2009). However, if a pro se plaintiff's complaint fails to meet the minimal pleading standard, it must be dismissed like any other deficient pleading. See Rodriguez v. Weprin, 116 F.3d 62, 65 (2d Cir. 1997).

On a motion to dismiss, the court is generally limited to reviewing the allegations in the complaint and documents attached to it or incorporated by reference. See Gryl v. Shire Pharmaceuticals Group PLC, 298 F.3d 136, 140 (2d Cir. 2002). However, if a plaintiff fails to attach or incorporate by reference a document that is integral to the complaint, "the court may nevertheless take the document into consideration in deciding the [] motion to dismiss, without converting the proceeding to one for summary judgment." International Audiotext Network, Inc. v. American Telephone and Telegraph Co., 62 F.3d 69, 72 (2d Cir. 1995). Further, because of the plaintiff's status as a pro se litigant, it is appropriate to consider not only the facts alleged in his pleadings, but also those asserted in his responsive papers to the motion to dismiss. See Gill v. Mooney, 824 F.2d 192, 195 (2d Cir. 1987); Hernandez v. Goord, 312 F. Supp. 2d 537, 542-43

(S.D.N.Y. 2004).

    B.  Eighth Amendment Claim

To state a claim under Section 1983, Mr. Paul must show that while acting under color of state law, the defendants deprived him of his federal constitutional or statutory rights.  42 U.S.C. § 1983; see McKithen v. Brown, 481 F.3d 89, 99 (2d Cir. 2007).  Here, the plaintiff claims that while incarcerated, he was deprived of adequate medical care in violation of the Eighth Amendment's protection against cruel and unusual punishment.

"In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'"  Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (alteration in original) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  A cognizable claim of deliberate indifference consists of (1) an objective "medical need" element measuring the severity of the alleged deprivation, and (2) a subjective "deliberate indifference" element measuring whether the prison official acted with a sufficiently culpable state of mind.  Smith v. Carpenter, 316 F.3d 178, 183-84 (2d Cir. 2003).

    1. Serious Medical Need

The objective element of an Eighth Amendment claim of inadequate medical care requires that the complainant's medical

condition be "sufficiently serious." Salahuddin v. Goord, 467 F.3d 263, 279 (2d Cir. 2006) (internal quotation marks omitted). While this standard most certainly includes "condition[s] of urgency [] that may produce death, degeneration, or extreme pain," Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996) (internal quotation marks omitted), it has also been interpreted to include "less serious denials [of medical attention] which cause or perpetuate pain," Brock v. Wright, 315 F.3d 158, 163 (2d Cir. 2003) (internal quotation marks omitted).

To support their argument that the plaintiff's foot ailment does not constitute a serious medical condition, the defendants rely on Rodriguez v. Ames, 224 F. Supp. 2d 555 (W.D.N.Y. 2002). (Def. Memo. at 8). In that case, the plaintiff's claim of deliberate indifference was dismissed because the facility's failure to provide him with orthopedic boots was found only to have caused the plaintiff "unnecessary discomfort," which did not amount to a serious medical condition. Id. at 562. This conclusion, however, does not preclude the possibility that a more severe injury resulting from inadequate footwear could give rise to a successful claim under Section 1983.

It is clear that injuries that are less than life-threatening can still qualify as substantially serious. The "seriousness" of any given medical condition is determined by factors including "(1)

whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) 'the existence of chronic and substantial pain.'" Brock, 315 F.3d at 162 (quoting Chance, 143 F.3d at 702). When the pain suffered is chronic, the plaintiff need only show that the pain is not merely "annoying." Id. at 163. Here, Mr. Paul's injuries and resulting pain can fairly be classified as chronic. This conclusion is not only supported by the plaintiff's description of continual pain, but also can be inferred from his daily treatment (2d Amend. Compl., ¶ II(D)) and the opinion of two podiatrists and a dermatologist, who concurred that he should be given suitable footwear (2d Amend. Compl., ¶ V; Paul Letter at 1: Consultation Request). Mr. Paul is not required to demonstrate that he experienced severe pain or pain that was "at the limit of human ability to bear." Brock, 315 F.3d at 163.

Although Mr. Paul's medical problem was not life-threatening, the lacerations on his feet caused by the DOC-issued shoes allegedly caused him consistent pain. Thus, he has pled the existence of injuries causing chronic pain of sufficient seriousness to satisfy the objective prong of his medical care claim.

11

### 2. Deliberate Indifference

The subjective prong of an Eighth Amendment claim of inadequate medical care requires that "the charged official [] act with a sufficiently culpable state of mind." Hathaway, 99 F.3d at 553. "The required state of mind, equivalent to criminal recklessness, is that the official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Hemmings v. Gorczyk, 134 F.3d 104, 108 (2d Cir. 1998) (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). Deliberate indifference can be found where prison personnel denies or delays an inmate's access to medical care. Estelle, 429 U.S. at 104-05. Each defendant's state of mind must be analyzed separately.

#### a. Warden Bailey

Mr. Paul alleges that Warden Bailey had notice of his medical condition and deliberately disregarded it. (2d Amend. Compl., ¶ II(D)). The plaintiff claims that he personally spoke with Warden Bailey at a GMDC "house meeting" and relayed the nurses' diagnosis that the prison-issued shoes caused his wounds. (2d Amend. Compl., ¶ II(D)). The plaintiff asserts that Warden Bailey had "personnally [sic] seen firsthand [the diagnosis] along with the appointment card." (2d Amend. Compl., ¶ II(D)). In response,

Warden Bailey purportedly stated that "anyone with medical problems would be given their shoes or suitable ones." (2d Amend. Compl., ¶ II(D)). Finally, Mr. Paul alleges that although Warden Bailey had the authority to obtain suitable footwear for the plaintiff, he failed to do so. (2d Amend. Compl., ¶ II(D)).

The plaintiff has thus pled that Warden Bailey knew that the prison-issued shoes caused Mr. Paul lacerations and chronic pain yet failed to take steps to resolve the problem. The plaintiff's allegations lead to a plausible inference that Warden Bailey's failure to provide the plaintiff with new shoes delayed Mr. Paul's access to medical care and therefore evince a purposeful or reckless disregard of his medical condition. See Estelle, 429 U.S. at 104. Holding the pro se complaint to a less stringent standard, the plaintiff has sufficiently pled facts supporting his claim of deliberate indifference against Warden Bailey.

### b. Deputy Warden Batson

Mr. Paul also alleges that Deputy Warden Batson had notice of his medical condition and deliberately disregarded it. The plaintiff claims that Deputy Warden Batson summoned him to the clinic, where he took photos of his medical condition. (2d Amend. Compl., ¶ II(D)). The plaintiff also maintains that Deputy Warden Batson personally told him that he would be given suitable shoes. (2d Amend. Compl., ¶ II(D)). Deputy Warden Batson allegedly made

one unsuccessful phone call to "property" to retrieve his shoes, put Captain Givens in charge of the plaintiff's medical needs, and issued authorization for Mr. Paul to wear supportive footwear. (2d Amend. Compl., ¶ II(D); Med. Card).

Mr. Paul also claims that Deputy Warden Batson disregarded the doctor's orders he reported on his grievance form. (2d Amend. Compl., ¶ II(D); Plaintiff Reply to Motion to Dismiss at 4). The plaintiff does not allege specific facts demonstrating Deputy Warden Batson's actual knowledge of the doctor's orders; however, it can be inferred from the complaint that Deputy Warden Batson had knowledge of the doctor's orders because he would not have requested medical photos of the plaintiff or issued him a Medical Modification Card had he not been aware of them. Ignoring the express orders of a doctor is more than merely negligent and is sufficient to withstand a motion to dismiss. See Gill, 824 F.2d at 196 ("Prison officials are more than merely negligent if they deliberately defy the express instructions of a prison's doctors.").

Deputy Warden Batson argues that because he took initial steps to help Mr. Paul obtain suitable footwear, he did not disregard the plaintiff's medical condition. (Def. Memo. at 12). The fact that the defendant took some action does weaken Mr. Paul's claim of deliberate indifference; however, it cannot be said at this early

14

stage that the claim is so entirely devoid of merit as to justify dismissal.  <u>See, e.g.</u>, <u>Hemmings</u>, 134 F.3d at 108-09 (holding that dismissal of deliberate indifference claim was not warranted despite prison officials having provided some medical attention to plaintiff).  Construing the complaint liberally, Mr. Paul has alleged facts sufficient to permit a plausible inference that Deputy Warden Batson was deliberately indifferent.  Therefore, the Second Amended Complaint also successfully pleads a cognizable claim of relief against Deputy Warden Batson.

<u>Conclusion</u>

For the reasons stated above, I recommend that the defendants' motion for dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure be denied.  Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation.  Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Barbara S. Jones, U.S.D.J., Room 1920, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007.  Failure to file timely objections will preclude appellate review.

Respectfully submitted,

*[signature: James C. Francis IV]*

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
       February 22, 2011

Copies mailed this date to:

James Paul
09-A-0790
Bare Hill Correctional Facility
Caller Box #20
181 Brand Road
Malone, New York 12953-0020

Paul S. Haberman, Esq.
Heidell, Pittoni, Murphy & Bach, LLP
99 Park Avenue
New York, New York 10016