UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -:
JAMES PAUL,                        : 09 Civ. 5784 (LAP) (JCF)
                                   :
            Plaintiff,             :      REPORT AND
                                   :      RECOMMENDATION
                                   :
     - against -                   :
                                   :
WARDEN BAILEY and DEPUTY WARDEN    :
MERVIN BATSON (M.B.),              :
                                   :
            Defendants.            :
- - - - - - - - - - - - - - - - - -:
TO THE HONORABLE LORETTA A. PRESKA, U.S.D.J.:

     James Paul, proceeding pro se, brings this action pursuant to

42 U.S.C. § 1983 against Warden Emmanuel Bailey and Deputy Warden

Mervin Batson.  The plaintiff claims that while he was detained at

the George Motchan Detention Center ("GMDC") and the Otis Bantum

Correctional Center ("OBCC"), the defendants failed to provide him

with medically-required shoes despite the fact that his

prison-issued footwear caused lacerations and open wounds and

resulted in pain.  Mr. Paul alleges that the defendants' behavior

demonstrates deliberate indifference to his medical condition,

constituting cruel and unusual punishment in violation of the

Eighth Amendment.  The defendants have moved for summary judgment

pursuant to Rule 56 of the Federal Rules of Civil Procedure.  For

the reasons set forth below, I recommend that the defendants'

motion be granted.

Background

The facts are set forth in the Complaints, the defendant's Rule 56.1 Statement and accompanying record (Defendant's Statement of Material Facts Pursuant to Local Rule 56.1 ("Def. Rule 56.1 Statement")), and Mr. Paul's deposition (Examination Before Trial of James Paul dated Oct. 25, 2013 ("Paul Dep."), attached as Exh. E to Declaration of Paul Stuart Haberman in Support of Defendants' Motion for Summary Judgment dated Feb. 12, 2014 ("Haberman Decl.")).[1]

---

[1] Local Civil Rule 56.1 requires factual statements supporting or opposing the motion for summary judgment, and "[e]ach numbered paragraph in the statement of material facts . . . will be deemed to be admitted . . . unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party." Local Civ. R. 56.1(c).   The defendants contend that the facts set forth in their Rule 56.1 Statement must be accepted as true, given that Mr. Paul failed to submit a counterstatement. (Affirmation of Paul Stuart Haberman in Further Support of Defendants' Motion for Summary Judgment dated March 26, 2014 ("Def. Reply"), ¶ 10)   Even though Mr. Paul received notice pursuant to Local Rule 56.2 regarding the requirements for opposing a summary judgment motion, I choose to exercise my "broad discretion" to "overlook a party's failure to comply with local court rules," and will conduct "at least some scrutiny of the record independent of [the defendants'] Local Rule 56.1 Statement," including Mr. Paul's deposition and the complaints, to "determine if there are any other material issues of fact." Holtz v. Rockefeller & Co., 258 F.3d 62, 73-74 (2d Cir. 2001); Geldzahler v. New York Medical College, 746 F. Supp. 2d 618, 620 n.1 (S.D.N.Y. 2010).   The impact should be minor, given the relative consistency and completeness of the record in question from the time of the second Amended Complaint to the present, as well as the comprehensiveness of the defendants' statement, which includes the allegations raised by Mr. Paul in his pleadings and deposition regarding his conversations with Warden Bailey and

Mr. Paul was arrested on March 31, 2006, and was transferred to GMDC approximately one month later. (Def. Rule 56.1 Statement, ¶ 8). At that time, Mr. James wore a "personal pair of black sneakers which did not contain special insoles, arch support, or any medically provided inserts" but which were "supportive." (Def. Rule 56.1 Statement, ¶ 8; Paul Dep. at 47, 52). Mr. Paul testified that he had a history of flat feet requiring podiatrist visits and supportive footwear, and that although he has not consistently worn prescribed footwear, he has required "good shoes." (Def. Rule 56.1 Statement, ¶ 5; Paul Dep. at 29, 53).

On or about December 2, 2008, the plaintiff received footwear issued by the Department of Correction of the City of New York ("DOC"), which had instituted a policy prohibiting inmates from wearing their own personal footwear and requiring them to wear prison-issued shoes. (Second Amended Complaint ("2d Am. Compl."), ¶ IIC; Def. Rule 56.1 Statement, ¶ 10). On December 8, 2008, the plaintiff was evaluated by a physician assistant at the GMDC medical clinic and received treatment for cuts and lacerations to his feet; he also obtained a referral for a podiatry consultation. (2d Am. Compl., ¶ II(D); Def. Rule 56.1 Statement, ¶ 11). The next

---

Deputy Warden Batson and covers all of the grievances and other medical documentation relevant to the case and referenced in the complaints.

day, Mr. Paul saw another physician assistant who also documented
"abrasions on his feet" and recommended "cleansing the wounds and
applying wound dressings."   (Def. Rule 56.1 Statement, ¶ 12).
Wound care and dressings were subsequently provided by nurses on
December 9, 13, and 14, and Mr. Paul "received a special pass so
that he could present to sick call for daily wound care for his
feet injuries." (Def. Rule 56.1 Statement, ¶ 13; Paul Dep. at 55).
The nurses described the wounds as "superficial" and attributable
to Mr. Paul's new prison-issued shoes. (Progress Note, attached as
part of Exh. F. to Haberman Decl., at 96; 2d Am. Compl., ¶ II(D)).
Mr. Paul alleges that his feet were "killing" him and that while he
was being treated he woke up every morning to find blood and pus on
his bedsheets from the wounds. (Paul Dep. at 54, 56-57).

On December 11, 2008, Mr. Paul filed a grievance with the
Inmate Grievance Resolution Committee (the "IGRC"), detailing his
complaints regarding the footwear policy. (Grievant's Statement
Form dated Dec. 11, 2008, attached to Complaint ("Compl.")).
Thereafter, on December 15, 2008, Mr. Paul attended a GMDC "house
meeting," where he relayed the nurses' diagnosis to Warden Bailey.
(2d Am. Compl., ¶ II(D); Def. Rule 56.1 Statement, ¶¶ 9, 14).   Mr.
Paul alleges that Warden Bailey saw the diagnosis and appointment
card, and then stated that "anyone with medical problems would be
given their shoes or suitable ones." (2d Am. Compl., ¶ II(D); Def.

4

Rule 56.1 Statement, ¶ 14; Paul Dep. at 45, 62).  Mr. Paul does not recall any subsequent discussions with Warden Bailey regarding his injuries or request for new footwear, or any conversations with other GMDC medical staff about the conversation at the house meeting.  (Def. Rule 56.1 Statement, ¶¶ 15-16; Paul Dep. at 77, 97).

On December 18, 2008, the plaintiff was transferred from GMDC to OBCC.  (Undated letter of James Paul ("Paul Letter"), attached to Compl., at 1; Def. Rule 56.1 Statement, ¶ 16).  Though Mr. Paul speculated during his deposition that he was transferred because he filed the footwear grievance (Paul Dep. at 79; Def. Rule 56.1 Statement, ¶ 16), there is no evidence indicating that this was the case or that Warden Bailey had any role, and it remains unclear why Mr. Paul was transferred.  (Def. Rule 56.1 Statement, ¶ 16).  Mr. Paul claims that the grievance he previously filed was not forwarded to the new facility.  (Amended Complaint ("Am. Compl."), ¶ II(D); Paul Letter at 1).  He alleges that he resubmitted that grievance to administrators at OBCC "on a later date." (Grievant's Statement Form dated Dec. 11, 2008, attached to Request for Medical/Mental Health Second Opinion dated Jan. 12, 2009 ("1/12/09 Grievance"), attached to Compl.).

On December 24, 2008, the plaintiff saw a podiatrist, Dr. Allan Goldberg, as recommended during his initial December 8, 2008

medical appointment; Dr. Goldberg documented Mr. Paul's foot wounds, diagnosed him with flat feet, prescribed "suitable footwear" and treatment of the wounds with dressings and antibiotic creams, and ordered Mr. Paul to come back in one week for a follow-up appointment.  (Paul Letter at 1; Def. Rule 56.1 Statement, ¶ 17).  Mr. Paul returned as instructed on December 31, 2008, and was seen by Dr. June Kasminoff, another podiatrist at OBCC; Dr. Kasminoff again documented "open, chronic superficial wounds on the dorsum of both feet" and dressed the wounds.  (Def. Rule 56.1 Statement, ¶ 18).  Dr. Kasminoff informed Mr. Paul that, pursuant to a policy that went into effect after his initial visit, he was now required to consult a dermatologist before receiving new footwear (Paul Letter at 2); Dr. Kasminoff prescribed daily dry sterile dressings, ordered a dermatology consult, recommended that Mr. Paul follow up with a podiatrist in one month, and "noted that the medical director should consider dispensing supportive shoes" (Def. Rule 56.1 Statement, ¶ 18).

On January 3, 2009, Mr. Paul submitted an interview request to DOC regarding his previous grievance filings, claiming that the doctors had prescribed "a treatment that [the plaintiff] did not get."  (DOC Interview Request Form dated Jan. 3, 2009, attached to Compl.).  He was informed on January 6, 2009, that he would have to submit requests for special footwear directly to medical staff

during sick call rather than seek such footwear through the grievance process. (Accommodation Determination Acknowledgment for Inmates dated Jan. 5, 2009, attached to Compl.; Def. Rule 56.1 Statement, ¶ 19). Mr. Paul then submitted a request for a second opinion seeking "medical clearance for his sneakers." (1/12/09 Grievance).

On January 14, 2009, the plaintiff was examined by a dermatologist, Dr. James Taft, who observed that Mr. Paul's wounds were the result of "chronic friction," prescribed an ointment for the abrasions, and recommended that he "wear normal shoes or sandals that do not cause friction to dorsal feet." (Consultation Request, attached to Compl.; Def. Rule 56.1 Statement, ¶ 20). On the following day, the plaintiff submitted another grievance to the IGRC, stating that although both the GMDC and OBCC facilities were aware of his medical problems, neither had provided him with suitable footwear as prescribed by the podiatrists and dermatologist. (Grievant's Statement Form dated Jan. 15, 2009, attached to Compl.; Def. Rule 56.1 Statement, ¶ 20 (noting that this form was not signed by Mr. Paul)). On January 21, 2009, Mr. Paul filed his fourth grievance, again asking that he be provided with medically-required shoes; the IGRC responded on January 28, 2009, informing Mr. Paul that he would be provided with the footwear recommended by his doctors. (Inmate Grievance Form dated

Jan. 21, 2009, attached to Am. Compl.).

On January 28, 2009, Mr. Paul apparently did not appear at a
scheduled follow-up appointment with the podiatrist. (Def. Rule
56.1 Statement, ¶ 21).  That same day, Dr. Michael Latunji referred
the dermatologist's recommendation to DOC and requested that the
plaintiff be permitted to wear his own shoes in light of the
injuries to his feet.  (Def. Rule 56.1 Statement, ¶ 21).  Also
around that time, Mr. Paul was called to the clinic by Deputy
Warden Batson so that photos could be taken of his medical
condition.  (2d Am. Compl., ¶ II(D); Def. Rule 56.1 Statement, ¶
22).  Deputy Warden Batson personally examined Mr. Paul's feet in
order to provide him with a "medical modification" card authorizing
different footwear.   (2d Am. Compl., ¶ II(D); Def. Rule 56.1
Statement, ¶ 22; Paul Dep. at 88-92; Medical Modification Card,
attached to Am. Compl.).  Deputy Warden Batson also made a phone
call to another officer seeking to obtain suitable shoes for the
plaintiff; he was allegedly informed that OBCC "did not have the
right size shoes for [the plaintiff]" and that Mr. Paul should "try
to obtain them in the next building that he was housed in." (Def.
Rule 56.1 Statement, ¶ 22).  Deputy Warden Batson then instructed
a Captain Givens to take care of Mr. Paul's medical needs and find
him appropriate footwear.  (2d Am. Compl., ¶ II(D); Def. Rule 56.1
Statement, ¶ 22).  However, despite Deputy Warden Batson's order,

Mr. Paul did not obtain suitable footwear that day.  (Am. Compl., ¶¶ II(D), V; Def. Rule 56.1 Statement, ¶ 22).  The plaintiff did not speak to Deputy Warden Batson again after this encounter.  (Def. Rule 56.1 Statement, ¶ 23).

According to a prison form, on February 2, 2009, Mr. Paul did not attend his scheduled appointment with the podiatrist because he had already received other shoes (Def. Rule 56.1 Statement, ¶ 23; Patient Refusal of Treatment dated Feb. 2, 2009, attached as part of Exh. F to Haberman Decl., at 51); however, he disputes that he ever refused to see a doctor (Paul Dep. at 83-84), and filed a grievance on February 3, 2009 stating that he still had not received suitable footwear (Def. Rule 56.1 Statement, ¶ 23; Grievance Form dated Feb. 3, 2009, attached as part of Exh. D to Haberman Decl., at 16).

Mr. Paul was transferred to the Robert N. Davoren Complex ("RNDC") in preparation for his transfer into New York State custody, and on February 4, 2009, he saw medical personnel at RNDC to ask about the status of his footwear.  (Def. Rule 56.1 Statement, ¶¶ 23-24).  He filed one additional grievance while at RNDC on February 5, 2009, asking DOC to "honor the Doctor's order and give [him] [his] footwear."  (Inmate Grievance Resolution Program - RNDC Statement Form dated Feb. 5, 2009, attached as part of Exh. D to Haberman Decl., at 17).  On February 12, 2009, Mr.

Paul was transferred to New York State custody and "subsequently received state-issued medical boots and outside shoes from his family." (Def. Rule 56.1 Statement, ¶ 25). Mr. Paul alleges that he still has some scarring on his feet from this time period. (Paul Dep. at 140).

Procedural History

Mr. Paul signed the original Complaint on January 14, 2009, and it was filed shortly thereafter. On June 24, 2009, Chief Judge Preska directed Mr. Paul to submit an amended complaint to correct several deficiencies in his pleading (Order at 1, 5-6), which he did on August 5, 2009. Warden Bailey and additional defendants moved to dismiss for failure to state a claim upon which relief could be granted. On the basis of my Report and Recommendation, the Honorable Jed Rakoff, U.S.D.J., granted leave for Mr. Paul to again amend his complaint in order to assert facts that would support a claim against Warden Bailey; specifically, that he had actual knowledge of the plaintiff's injuries. Paul v. Bailey, No. 09 Civ. 5784, 2010 WL 3292673 (S.D.N.Y. July 21, 2010), report and recommendation adopted, 2010 WL 3292672 (S.D.N.Y. Aug. 18, 2010).

On August 25, 2010, the plaintiff filed the Second Amended Complaint, and the defendants moved to dismiss for failure to state a claim upon which relief can be granted. I issued a Report and Recommendation holding that Mr. Paul had pled "the existence of

injuries causing chronic pain of sufficient seriousness to satisfy the objective prong of his medical care claim" (Report and Recommendation dated Feb. 21, 2011 ("2/21/11 R&R"), at 11), and had sufficiently pled that Warden Bailey and Deputy Warden Batson "knew that the prison-issued shoes caused Mr. Paul lacerations and chronic pain yet failed to take steps to resolve the problem," providing a plausible inference of deliberate indifference to his medical condition (2/21/11 R&R at 13, 15).  The Honorable Richard Owen, U.S.D.J., adopted that report in May 2013.  (Order dated May 11, 2013).

Discussion

    A.   Summary Judgment Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); accord Doninger v. Niehoff, 642 F.3d 334, 344 (2d Cir. 2011).  A dispute regarding a material fact is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); accord SCR Joint Venture L.P. v. Warshawsky, 559 F.3d 133, 137 (2d Cir. 2009), and a material fact is one that "'might affect the outcome of the suit under the governing law,'" Roe v. City of Waterbury, 542 F.3d 31, 35 (2d Cir. 2008) (quoting

11

Anderson, 477 U.S. at 248).  "In deciding whether a genuine dispute exists, a court must 'construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant.'"  Seeman v. Local 32B-32J, Service Employees Union, 769 F. Supp. 2d 615, 620 (S.D.N.Y. 2011) (quoting Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003)).

The moving party bears the initial burden of identifying those portions of the record that demonstrate "the absence of a genuine issue of material fact," Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), following which the opposing party must "'come forward with specific facts showing a genuine issue for trial,'" Wrobel v. County of Erie, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)).  The parties can support their claims with discovery materials, stipulations, affidavits, or other evidence, see Fed. R. Civ. P. 56(c)(1)(A); however, "only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment," Presbyterian Church of Sudan v. Talisman Energy, Inc., 582 F.3d 244, 264 (2d Cir. 2009) (internal quotation marks omitted).  Thus, the parties cannot rely on "'conclusory allegations or unsubstantiated speculation'" to support or defeat a motion for summary judgment.  Jeffreys v. City

12

of New York, 426 F.3d 549, 554 (2d Cir. 2005) (quoting Fujitsu Ltd. v. Federal Express Corp., 247 F.3d 423, 428 (2d Cir. 2001)).  On the other hand, it is not the court's role to resolve disputed issues of fact, as "choices between conflicting versions of the events are matters for the jury." Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996).  "'Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" Kaytor v. Electric Boat Corp., 609 F.3d 537, 545 (2d Cir. 2010) (emphasis omitted) (quoting Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150 (2000)).

Where a litigant is pro se, his pleadings should be read liberally and interpreted "'to raise the strongest arguments that they suggest.'" Fulton v. Goord, 591 F.3d 37, 43 (2d Cir. 2009) (quoting Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001)). Nevertheless, proceeding pro se does not relieve a litigant from the usual requirements of summary judgment, and a pro se party's "bald assertion, completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." Geldzahler, 746 F. Supp. 2d at 620 n.1 (internal quotation marks omitted).

B.  Medical Care Claim

To state a claim under Section 1983, the plaintiff must show that the defendants deprived him of federal constitutional or

statutory rights while acting under the color of state law. McKithen v. Brown, 481 F.3d 89, 99 (2d Cir. 2007). Here, Mr. Paul claims that, while incarcerated, he was deprived of adequate medical care in violation of the Eighth Amendment's protection against cruel and unusual punishment.[2]

The Eighth Amendment "imposes a duty upon prison officials to ensure that inmates receive adequate medical care." Salahuddin v. Goord, 467 F.3d 263, 279 (2d Cir. 2006). However, "not every claim made by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Walker v. Schriro, No. 11 Civ. 9299, 2013 WL 1234930, at *13 (S.D.N.Y. March 26, 2013) (citing Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003)). In order to establish a claim of inadequate medical care, a plaintiff must prove "deliberate indifference to [his] serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104 (1976); see also Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998). A cognizable claim of deliberate indifference consists of (1) an

---

[2] It remains unclear whether Mr. Paul had been convicted at the time his claims arose or whether he remained a pretrial detainee. However, this distinction is inconsequential because medical care claims of pretrial detainees made pursuant to the Fourteenth Amendment are evaluated by the same standards as those of convicted persons made pursuant to the Eighth Amendment. Caiozzo v. Koreman, 581 F.3d 63, 72 (2d Cir. 2009); see also Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979); Cuoco v. Moritsugu, 222 F.3d 99, 106 (2d Cir. 2000).

objective "medical need" element measuring whether the alleged deprivation was sufficiently serious, and (2) a subjective "deliberate indifference" element measuring whether the prison official acted with a sufficiently culpable state of mind. <u>Smith</u>, 316 F.3d at 183-84; <u>see also</u> <u>Hill v. Curcione</u>, 657 F.3d 116, 122 (2d Cir. 2011).

      1. <u>Serious Medical Need</u>

To satisfy the objective element of an inadequate medical care claim under the Eighth Amendment, a prisoner's medical condition must be "sufficiently serious." <u>Salahuddin</u>, 467 F.3d at 279, 280 (internal quotation marks omitted); <u>see also</u> <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991). "A serious medical condition exists where the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." <u>Harrison v. Barkley</u>, 219 F.3d 132, 136 (2d Cir. 2000) (internal quotation marks omitted). If the inadequacy at issue is "a failure to provide any treatment for an inmate's medical condition, courts examine whether the inmate's [underlying] medical condition is sufficiently serious." <u>Salahuddin</u>, 467 F.3d at 280. If, however, "the inadequacy is in the medical treatment given, the seriousness inquiry is narrower." <u>Id.</u> Then, "it's the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying

medical condition, considered in the abstract, that is relevant for Eighth Amendment purposes." Smith, 316 F.3d at 185-86.

This standard is most certainly met by demonstrating "condition[s] of urgency [] that may produce death, degeneration, or extreme pain," Hathaway v. Coughlin, 99 F.3d 550 (2d Cir. 1996) (internal quotation marks omitted), but it has also been interpreted to include "less serious denials [of medical attention] which cause or perpetuate pain," Brock v. Wright, 315 F.3d 158, 163 (2d Cir. 2003) ("[Courts] will no more tolerate prison officials' deliberate indifference to the chronic pain of an inmate than we would a sentence that required the inmate to submit to such pain."); see also Todaro v. Ward, 565 F.2d 48, 52 (2d Cir. 1977). The "seriousness" of any given medical condition is determined by factors such as "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) 'the existence of chronic and substantial pain.'" Brock, 315 F.3d at 162-63 (quoting Chance, 143 F.3d at 702). Pain that is chronic and more than merely annoying may be sufficiently serious. See Brock, 315 F.3d at 163.

As noted in my Report and Recommendation denying the defendants' motion to dismiss the Second Amended Complaint, while

16

"Mr. Paul's medical problem was not life-threatening, the lacerations on his feet caused by the DOC-issued shoes allegedly caused him consistent pain," and were deemed worthy of treatment by medical personnel; the risk of harm arising from the failure to provide new footwear to alleviate the pain and injuries was therefore "of sufficient seriousness to satisfy the objective prong of his medical care claim." (2/21/11 R&R at 11). Mr. Paul's allegations of pain and open wounds are supported by his deposition testimony, the grievances he filed during the relevant time period, and the medical reports of prison officials who provided care and prescribed new footwear, and there is no new evidence contradicting those injury reports.

Indeed, the defendants do not contest that Mr. Paul saw prison medical officials repeatedly from December of 2008 to February of 2009 for treatment. Instead, they offer the expert testimony of Dr. Paul M. Greenberg, a podiatrist, who, they say, "conclusively established" that Mr. Paul's injury was not serious. (Memorandum of Law in Support of Defendants' Motion for Summary Judgment Pursuant to F.R.C.P. Rule 56 ("Def. Memo.") at 6). Upon examining Mr. Paul's medical file, Dr. Greenberg apparently concluded, "to a reasonable degree of medical certainty," that Mr. Paul's condition was superficial and did not pose a risk of harm because there was no infection, surgery, nor permanent damage; that there was "no

17

medical basis for [the] [p]laintiff to be prescribed corrective footwear while he was incarcerated at Rikers Island;" that the plaintiff's wounds were "consistent with a patient scratching his foot and not the types of wounds that typically develop due to friction from wearing ill-fitting footwear;" and that the injuries "were likely exacerbated by [the] [p]laintiff's failure to follow the physician assistant's recommendation to wear socks with his shoes." (Def. Memo. at 6-8).

The defendants argue that Mr. Paul, on the other hand, "simply submit[ted] his own ipse dixit assertions as to the importance and implications of the medical evidence" in the record (Def. Reply, ¶¶ 5, 9), and that, because Mr. Paul "fail[ed] to submit an expert affidavit, or any other competent evidence, to counter [Dr. Greenberg's] expert opinion," those opinions "should [] be deemed undisputed fact by the Court." (Def. Reply, ¶¶ 5, 8). The defendants mischaracterize the evidence in this case. Mr. Paul is not relying on his own lay assessment of medical records to establish that he was suffering from a medical condition. Cf. Mabry v. New York City Department of Correction, 465 F. App'x 31, 32 (2d Cir. 2012) (affirming that plaintiff's lay interpretation of medical records failed to rebut contrary medical evidence). Rather, his position that he was injured and in pain is supported by the opinions and conclusions of medical personnel who treated

18

him while he was at GMDC and OBCC, documented open lacerations requiring wound care, and prescribed a change in footwear to alleviate that condition.  The plaintiff does not need to hire an expert to explain his subjective level of discomfort or the treatment and prescriptions he received from medical staff.  While the defendants' expert may provide compelling testimony that Mr. Paul's injuries were not as serious or painful as reported (or that they were not caused by his new footwear, an issue unrelated to the objective prong inquiry), his conclusions are opinion, not fact, and certainly not uncontroverted.  The severity of Mr. Paul's injuries is ultimately a disputed issue of material fact inappropriate for determination on summary judgment.[3]

_____

[3]  The defendants also cite a number of cases in this district holding that pain or discomfort arising from prison-issued footwear does not constitute a sufficiently serious medical condition to warrant Eighth Amendment protection.  (Def. Memo. at 8-9); see Shamel v. Agro, No. 11 Civ. 9473, 2013 WL 686681, at *9 (S.D.N.Y. Jan. 28, 2013) (denying claim of foot pain as insufficiently serious and not "so debilitating or urgent that the failure to provide him with [] supportive footwear subjected him to a significant risk of harm"), report and recommendation adopted, 2013 WL 704162 (S.D.N.Y. Feb. 26, 2013); Stevens v. City of New York, No. 12 Civ. 3808, 2013 WL 81327, at *3 (S.D.N.Y. Jan. 8, 2013), ("Indeed, courts in this Circuit have consistently found that pain and other problems resulting from being forced to wear institutional footwear are not sufficiently serious to satisfy [the objective] prong."), aff'd, 541 F. App'x 111 (2d Cir. 2013); Park v. City of New York, No. 10 Civ. 9627, 2011 WL 5865083, at *4 (S.D.N.Y. Nov. 22, 2011) (denying claim of deprivation of supportive footwear to alleviate foot pain caused by plantar fasciitis as insufficiently serious); Williams v. Department of Corrections, No. 11 Civ. 1515, 2011 WL 3962596, at *4 (S.D.N.Y.

2. <u>Deliberate Indifference</u>

The subjective prong of an Eighth Amendment claim of inadequate medical care requires that "the charged official [] act with a sufficiently culpable state of mind." <u>Hathaway</u>, 99 F.3d at 553. "The required state of mind, equivalent to criminal recklessness, is that the official 'knows of and disregards an

_____

Sept. 7, 2011) ("Although Williams may have been in discomfort for a period of time from having to wear shoes that he claims were 'poorly constructed with no support for the foot or cushion on the soles,' this does not constitute a condition of confinement that offends contemporary standards of decency or poses an excessive risk to a prisoner's health or safety."); <u>Hallett v. City of New York</u>, No. 08 Civ. 2831, 2010 WL 1379733, at *6 (S.D.N.Y. Mar. 26, 2010) ("[T]he fact that Plaintiff's feet hurt for a few weeks does not rise to the level of a medical condition that can support a constitutional claim for inadequate medical care."); <u>see also</u> <u>Taylor v. Department of Correction</u>, No. 11 Civ. 6892, 2012 WL 3024743, at *4 (S.D.N.Y. July 24, 2012) (denying claim of foot pain from non-supportive footwear as "not sufficiently serious to satisfy the objective component of a deliberate indifference claim[ ]"), <u>report and recommendation adopted sub nom.</u> <u>Taylor v. Schriro</u>, 2012 WL 3306477 (S.D.N.Y. Aug. 13, 2012); <u>Hernandez v. Goord</u>, No. 02 Civ. 1704, 2006 WL 2109432, at *6-7 (S.D.N.Y. July 28, 2006) (denying claim of four years of foot pain prior to surgery as insufficiently serious); <u>but see</u> <u>Walker</u>, 2013 WL 1234930, at *14 ("[T]he Eighth Amendment [does not] abide [] the wanton infliction of months of 'extreme' pain through the allegedly arbitrary denial of medically authorized footwear by prison guards."). While foot pain caused by prison-issued footwear may not always be sufficiently serious to rise to the level of an Eighth Amendment violation, Mr. Paul has alleged that he had open wounds on his feet for a period of weeks, if not months, as a result of the prison-issued shoes, and that these injuries required daily care and caused him significant pain. Ignoring such a chronic condition by failing to provide appropriate footwear, even if the injuries were relatively superficial, may present a serious risk to the long-term health of inmates. Such allegations are not <u>per se</u> insufficiently serious.

excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Hemmings v. Gorczyk, 134 F.3d 104, 108 (2d Cir. 1998) (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)); see also Chance, 143 F.3d at 703 (plaintiff must prove that "prison official knew of and disregarded the plaintiff's serious medical needs"); Salahuddin, 467 F.3d at 280 (deliberate indifference requires official be "actually aware of a substantial risk that serious inmate harm will result"). Each defendant's state of mind must be analyzed separately.

                    a.  Warden Bailey

In recommending denial of the motion to dismiss the Second Amended Complaint, I held that Mr. Paul's allegations that Warden Bailey had notice of his medical condition from the house meeting yet failed to take steps to procure suitable footwear for Mr. Paul "lead to a plausible inference that Warden Bailey's failure to provide the plaintiff with new shoes delayed Mr. Paul's access to medical care and therefore evince a purposeful or reckless disregard of his medical condition." (2/21 R&R at 12-13). Discovery, however, has failed to yield any facts supporting that inference.

Warden Bailey saw the plaintiff and told him that inmates with

medical problems would be given suitable replacement footwear, but that was the only interaction between the two, and Mr. Paul was transferred to OBCC just three days later.  There is no evidence that Warden Bailey did anything to "disregard" Mr. Paul's needs -- he likely assumed, not entirely incorrectly, that the medical personnel were taking steps to resolve Mr. Paul's problem.  Nor was Warden Bailey necessarily aware of the seriousness of Mr. Paul's injuries; again, the Warden was informed that Mr. Paul was receiving medical care and that new footwear had been prescribed, and there is no evidence that Warden Bailey had any knowledge that immediate action was required.

Additionally, at that time, Mr. Paul had been receiving treatment for only one week, and the appropriateness of the Warden's actions must be considered in light of the severity of Mr. Paul's alleged injury.  While foot lacerations may cause sufficiently serious chronic pain, the response required of Warden Bailey need not be as swift or direct as the appropriate response to an inmate having a sudden heart attack, for example, or even as what Warden Bailey should have done had Mr. Paul's wounds showed signs of serious infection.  Had Mr. Paul's injury been more severe, or had the Warden's inaction continued for a prolonged period of time while Mr. Paul was under his care, more might be demanded of Warden Bailey; but the standard of care is

22

recklessness, not negligence or strict liability, and the facts
presented do not indicate that Warden Bailey was consciously and
deliberately indifferent to Mr. Paul's injury.

        b.  <u>Deputy Warden Batson</u>

      Deputy Warden Batson had more extensive contact with Mr. Paul
and had greater awareness of the nature and severity of his foot
injuries.   Mr. Paul alleges that Deputy Warden Batson took
photographs of his feet, promised that suitable shoes would be
provided, and contacted other officers seeking out alternative
footwear. (2d Am. Compl., ¶ II(D); Def. Rule 56.1 Statement, ¶ 22;
Paul Dep. at 88-92).  These attempts to address Mr. Paul's medical
concerns do not suggest deliberate indifference or reckless
disregard; rather, "[t]he fact that the defendant took some action
[] weaken[s] Mr. Paul's claim of deliberate indifference."
(2/21/11 R&R at 14).

      Deputy Warden Batson then placed another officer, Captain
Givens, in charge of seeing to Mr. Paul's medical needs.  (2d Am.
Compl., ¶ II(D); Def. Rule 56.1 Statement, ¶ 22).  Nothing in the
record suggests that this delegation of authority was reckless, or
that the defendant knew that his instructions to find adequate
footwear for Mr. Paul would not yield results that day.  Nor is
there any indication that Deputy Warden Batson was ignoring
doctors' orders rather than attempting, albeit unsuccessfully, to

make arrangements to fulfill them.

At the conclusion of Deputy Warden Batson's one and only encounter with Mr. Paul, he had taken several positive steps to provide Mr. Paul with medical care, and reasonably delegated follow-up to another officer.  Given the extent of Mr. Paul's chronic, not traumatic, injury, Deputy Warden Batson acted with sufficient concern and attention.  At the motion to dismiss stage, these facts left room for an inference that the defendant had not taken sufficient action and disregarded Mr. Paul's injuries (2/21/11 R&R at 13-15); the intervening fact-finding has failed to yield any additional support for this inference, instead demonstrating that the defendant's actions were not an improper response to Mr. Paul's medical needs.

C.  <u>Qualified Immunity</u>

The defendants argue that even if they were deliberately indifferent to a sufficiently serious medical condition, they are nevertheless entitled to qualified immunity.[4]  They contend that

---

[4] The defendants argue, incorrectly, that because Mr. Paul did not argue the issue of qualified immunity in his opposition to the motion for summary judgment "[a]ny claim that the Defendants did not have qualified immunity has thus been 'abandoned' by [the] Plaintiff." (Def. Reply, ¶¶ 11-12).  The defendants continue to bear the burden of asserting a qualified immunity affirmative defense, irrespective of whether the plaintiff has made any arguments against it.  <u>Black v. Coughlin</u>, 76 F.3d 72, 75 (2d Cir. 1996).

they did not know that their actions were within the scope of conduct prohibited by the Eighth Amendment and had no reason to believe "that their failed efforts to help Plaintiff obtain suitable footwear in any way encroached upon Plaintiff's right to be free from deliberate indifference to his medical needs." (Def. Memo. at 13-14).

As a threshold matter, courts often determine first whether the facts, when viewed in the light most favorable to the party professing an injury, "show the officer's conduct violated a constitutional right." Saucier v. Katz, 533 U.S. 194, 201 (2001). If so, the court then examines whether "the right was clearly established." Id. On the other hand, "[i]f no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." Id.

As discussed above, Mr. Paul's constitutional rights were not violated because the defendants were not deliberately indifferent to his medical needs.

Conclusion

For the foregoing reasons, I recommend that the defendant's motion for summary judgment (Docket no. 57) be granted.

Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have

fourteen (14) days from this date to file written objections to this Report and Recommendation.  Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Loretta A. Preska, Room 2220, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007.  Failure to file timely objections will preclude appellate review.

Respectfully submitted,

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:    New York, New York
          May 7, 2014

Copies mailed this date:

James Paul
P.O. Box 60434
Brooklyn, NY 11206-0434

Paul S. Haberman, Esq.
Laura Del Vecchio, Esq.
J.C. O'Brien, Esq.
Heidell, Pittoni, Murphy & Bach, LLP
99 Park Avenue
New York, New York 10016